IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE FOUNDATION FOR INDIANA
UNIVERSITY OF PENNSYLVANIA,
RESIDENTIAL REVIVAL INDIANA,

               Plaintiffs,

                 v.

UTICA NATIONAL INSURANCE
GROUP,

               Defendant.

22cv1126
ELECTRONICALLY FILED

## MEMORANDUM OPINION

Before the Court in this breach of contract and bad faith case, is Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in support of same. ECF 5 and ECF 6. Plaintiff filed a Brief in Opposition (ECF 6) and Defendant filed a Reply to the Brief in Opposition. ECF 10. The matter is now ripe for adjudication.

## I. STANDARD OF REVIEW

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon which relief can be granted." Detailed factual pleading is not required – Rule 8(a)(2) calls for a "short and plain statement of the claim showing that the pleader is entitled to relief" – but a Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining the plausibility of an

alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (In reference to third step, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a Motion to Dismiss for failure to state a claim, the Court must view all of the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. See *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions"). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## II. FACTUAL BACKGROUND

The following facts are accepted as true solely for the purposes of adjudicating Defendant's Motion to Dismiss brought in accordance with Fed.R.Civ.P. 12(b)(6). All facts set forth herein have been taken from Plaintiff's Complaint which attached/included a copy of the insurance policy ("policy") at issue, unless otherwise noted. ECF 1-7.

Plaintiffs are policyholders who purchased an insurance policy from Defendant ("Utica"). The insurance policy is a commercial general insurance policy.

Plaintiffs allege that in March of 2020, its four dormitories at were "forced to close as a direct and exclusive result of the shut-down orders issued by Pennsylvania's Governor, . . . the Department of Health, and the State System of Higher Education. . . ." ECF 1-7, ¶ 3, ¶ 13. All

of the students living in those dormitories were allegedly "deprived use thereof from March 16, 2020 to May 9, 2020" which caused Plaintiffs to issue refunds "to those students in excess of $5 million." Id., ¶ 4.  Plaintiffs allege that the four dormitories at issue are all "covered premises" under the insurance issued by Defendant.  Id., ¶ 13-17.  The Complaint explains that because the students were deprived use of the four dormitories from March 16, 2020 through May 9, 2020, the Plaintiffs had to issue in excess of a $5 million as refunds to those students, and thus, Plaintiffs incurred a $5 million loss of revenue – a loss which Plaintiffs claim was insured under the policy.  Id., ¶ 18-22.

Plaintiffs' Complaint describes details about the shut-down orders it received from the Governor of the Commonwealth of Pennsylvania and Pennsylvania state government agencies – specifically that schools were to remain closed for the remainder of the 2019-2020 academic year due to COVID-19. Id., ¶ 23-36.  These shut down-orders required the students to vacate the four dormitories which Plaintiff alleges are insured under the policy.

In addition, the Complaint describes COVID-19 as a highly contagious virus which caused to a Stay at Home Order to be issued on March 23, 2020, for the entire Commonwealth of Pennsylvania. Id., ¶ 37-44.

Per the Complaint, the "physical damage to the [d]ormitories was inflicted because COVID-19 was present in the Commonwealth of Pennsylvania, causing a presumption of contamination, not because any physical aspect of the virus inflicted any physical damage to the [d]ormitories." Id., ¶45.  As a result of the presumption of contamination, Plaintiffs allege that they lost business income in excess of $5 million.

Finally, Plaintiffs allege that the policy covers their "lost business income" as defined by the policy. Id., ¶ 48-50.  Further, Plaintiffs allege that the exclusion of loss due to virus or

bacteria ("the virus exclusion") is inapplicable and/or ambiguous.  Id., ¶ 52, ¶ 54. Plaintiffs also claim that by not investigating their claim, and instead simply issuing a denial of coverage letter, Defendant breached its insurance contract with Plaintiffs and acted in bad faith.  Id., ¶ 61-67 and ¶ 74-91.  Plaintiffs seek a declaration of coverage under the policy and demand damages for their alleged losses.

## III. ANALYSIS

### A. General Principles to be Applied

The Court will analyze this matter using the following principles.

First, the Court considers that under Pennsylvania law, "[t]he initial burden in insurance coverage disputes is on the insured to show that the claim falls within the policy." *Brian Handel D.M.D., P.C. v. Allstate Ins*. Co., No. CV 20-3198, 499 F.Supp.3d 95, 98 (E.D. Pa. 2020). "[I]f the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (*citing Koppers Co. v. Aetna Cas. & Sur. Co*., 98 F.3d 1440, 1446 (3d Cir. 1996)).  Accordingly, if Plaintiffs here can show their claim(s) fall within the policy, then Defendant must demonstrate that an exclusion excuses it from providing the coverage to Plaintiffs.

Second, to determine whether a claim falls within the policy and/or whether an exclusion excuses the insurance company from providing coverage, the court, applying Pennsylvania law, notes that "the interpretation of a contract of insurance is a matter of law for the courts to decide." *Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co*., 546 F. Supp. 3d 354, 361 (E.D. Pa. 2021), quoting *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir.

2012) and *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1235 (1994)).  Thus, in the instant case, given the issue raised by Defendant in its 12(b)(6) motion to dismiss in this case, this Court has been asked and is obliged to interpret the insurance contract as a matter of law.

Third, when working to interpret a contract of insurance, a court's objective is to discern the intent of the parties from the language of the policy.  *Id.*  To that end, this Court must "read the policy as a whole and construe[ ] [it] according to the plain meaning of its terms." *Boscov's*, *supra*, citing *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 676 (3d Cir. 2016) (internal quotation marks and citation omitted).  The policy "must be construed in such a manner as to give effect to all of its provisions." *Boscov's*, *supra*, citing *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 258 (3d Cir. 2019) (internal quotation marks and citation omitted); see also *Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018) ("The court should not consider isolated individual terms but should instead consider the entire contractual provision to determine the parties' intent.") (citing *NorFab Corp. v. Travelers Indem. Co.*, 555 F. Supp. 2d 505, 509 (E.D. Pa. 2008)).

Fourth, when weighing if a term or phrase can be ascribed its "plain meaning" a court must first consider if that term or phrase is comprised of "[c]lear contractual terms that are capable of one reasonable interpretation . . . without reference to matters outside the contract." *Boscov's*, *supra*, citing *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) (quoting *Krizovensky v. Krizovensky*, 425 Pa.Super. 204, 624 A.2d 638, 642 (1993)). By contrast, contractual language is ambiguous if it "is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (quoting *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1425 (3d Cir. 1994)); see also *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996) ("Disagreement between

6

the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous." (citing *Vogel v. Berkley*, 354 Pa.Super. 291, 511 A.2d 878, 881 (1986))). Ambiguous language must be construed against the insurer. *Squires*, 667 F.3d at 391.

### B. Application of the Principles

#### 1. Does the Claim Fall Within the Policy - Plaintiffs' Position

This Court first considers whether the Plaintiffs' claim falls within the policy.[1]  In count one of the Complaint, Plaintiffs ask this Court for a declaration of coverage, and in count two, Plaintiffs argue that Defendant breached the contract of insurance by denying their request for benefits.  Count three seeks damages under Pennsylvania's bad faith statute.

Count one is where this Court begins its analysis. Plaintiffs seek a declaration coverage under the insurance policy at issue.  In their brief in opposition to the motion to dismiss, Plaitniffs argue that their claims fall within the following portions of the policy:

> (1) In the "Building and Personal Property Coverage" section of the insurance policy, the policy indicates that Defendant agrees to pay for "direct physical loss of or damage to Covered Property."  ECF 9, p. 2.

> (2) In the "Business Income Coverage" section of the insurance policy, the policy indicates that Defendant will pay for "the actual loss of Business Income [Plaintiffs] sustain due to the necessary 'suspension' of [their] 'operations' during the 'period of restoration'" which is caused by the "direct physical loss of or damage to property."  Id.

> (3) In the "Extra Expense Coverage" section of the policy, the policy indicates that Defendant will pay for "necessary expenses [Plaintiffs] incur during the 'period of

---

[1] The complete policy was attached to Plaintiffs' Complaint and was referenced throughout the Complaint. ECF 1-7.

restoration' that [they] would not have incurred if there had been no direct physical loss of or damage to property." Id.

(4) In the "Civil Authority Coverage" section of the policy, the policy indicates that Defendant will pay for the "actual loss of Business Income [that Plaintiffs] sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than the described premises." Id.

Based on these four coverage sections, Plaintiffs argue that their claim for a declaration of coverage should survive Defendant's motion to dismiss.  Specifically, Plaintiffs claim the facts they pled – *i.e.,* they were forced to close the dormitories solely because of the shut-down orders Issued by Pennsylvania's Governor in response to the COVID-19 pandemic (ECF 9, p. 3); the dormitories were closed from March 16, 2020 through May 9, 2020, causing Plaintiffs to lose $5 million because of refunds which had to be paid to students who were not able to live in the dormitories during that time period – support their claim for a declaration of coverage. Id.  In sum, Plaintiffs contend that the above four coverage sections of the policy provide coverage for their $5 million loss Plaintiffs endured as a result their dormitories being vacated due to the COVID-19 pandemic which led to the Commonwealth's shut-down orders.

## 2. Does the Claim Fall Within the Policy – Defendant's Position

Defendant's response is that the policy does not provide coverage given the plain meaning of the four coverage sections quoted above, and the policy also contains an exclusion which excuses Defendant from providing coverage for the precise loss sustained by Plaintiffs because of the root cause of the loss.[2] ECF 6, p. 12. Specifically, Defendant contends that the

---

[2] The Court will address the interpretation of the phrase "direct physical loss of or damage to property," infra.

8

"Exclusion of Loss Due to Virus or Bacteria" (hereinafter, "the virus exclusion") applies to preclude coverage when the loss is caused by virus or bacteria. Id.  The virus exclusion reads that Defendant "will not pay for loss or damage caused by or resulting from any virus."  Id., p. 6. The virus exclusion also indicates that it applies to "all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but is not limited to forms or endorsements that cover . . . business income, extra expense or action of civil authority."

Defendant explains that because Plaintiffs experienced a loss which was caused by COVID-19 (which was the reason for, and basis of, the Commonwealth's shut-down order) and because COVID-19 is a virus, the virus exclusion bars recovery under the insurance policy.  The Defendant cites numerous cases in support of its argument. See ECF 6-1, Appendix "A" which is an appendix of 34 Pennsylvania-based federal district court and state court opinions essentially holding that the virus exclusion bars an insured's recovery under the terms of the policy due to the COVID-19 virus and related shut-down orders issued by the Commonwealth.

### 3. The Virus Exclusion

This Court has considered those cases, and although none are binding on this Court, several decisions reached by the United States Court for the Eastern District of Pennsylvania cited by Defendant as well decisions emanating from the United States District Court for the District of New Jersey are substantially similar to instant case. In both the Eastern District and New Jersey District Courts held that where a governmental response to a virus causes the insured to suffer a loss, the loss is excluded by the virus exception to the insurance policy.  See, *i.e.*, *BPC Rest. Mgmt. LLC v. AmGUARD Ins. Co.*, No. CV 22-02229 (FLW), 2022 WL 9814377, at *4, n.4 (D.N.J. Oct. 12, 2022) ("Regardless of whether the Virus Exclusion contains an anti-concurrent clause, courts in this district have consistently held that COVID-19 is the proximate

cause of business losses resulting from the pandemic and they have consistently applied the Virus Exclusion to preclude coverage." See *J.G. Optical, Inc. v. Travelers Cos., Inc.*, No. 20-5744, 2021 WL 4260843, at *5 (D.N.J. Sept. 20, 2021) (compiling cases finding that COVID-19 was the proximate cause of the insured's losses)); *44 Hummelstown Assocs., LLC v. Am. Select Ins. Co*., 542 F. Supp. 3d 328, 340-41 (M.D. Pa. 2021) ("[T]he Policy unambiguously excludes from coverage losses caused by any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. There is no other way to characterize COVID-19 than as a virus . . . the Virus Exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss."); and *SSN Hotel Mgmt., LLC v. Harford Mut. Ins. Co.*, 533 F. Supp. 3d 260, 267–68 (E.D. Pa. 2021), *appeal dismissed*, No. 21-1921, 2022 WL 1532646 (3d Cir. Mar. 15, 2022) ("Even if Plaintiffs' claimed losses fell within the grant of coverage under the Business Income, Extra Expense, or Civil Authority provisions, the Virus Exclusion still bars recovery. The Virus Exclusion applies to "loss or damage caused by or resulting from any virus . . ."").

Based on the abundance of case law emanating from the Eastern District and New Jersey District Courts, which this Court finds instructive, this Court concludes that the virus exclusion set forth in the instant policy excludes coverage, thereby negating any obligation on Defendant's part to pay for Plaintiffs' loss due to the COVID-19 pandemic and related shut-down orders which forced students to vacate the dormitories and allegedly caused Plaintiffs' $5 million loss.

### 4. Direct Physical Loss or Damage to Plaintiffs' Property

Plaintiffs also argue that Defendant's failure to define "direct physical loss of or damage to property" and the ambiguous nature of that phrase entitles Plaintiffs to a declaration of coverage.  Defendant disagrees that the phrase is ambiguous and further contends that because

Plaintiffs' $5 million loss in income was not caused by direct physical loss, there is no coverage

under the policy.

Recently, Judge Hornak, Chief Judge for the United States Court for the Western District

Court of Pennsylvania, noted the following:

> Pennsylvania is within the Third Circuit, and our Court of Appeals has not
> yet decided a COVID-19 business interruption insurance case, but it has
> issued precedential and non-precedential decisions in cases involving an
> insurance claim for expenses incurred from the abatement of asbestos-
> containing materials, see *Port Auth. of NY & NJ v. Affiliated FM Ins. Co.*,
> 311 F.3d 226 (3d Cir. 2002), and an insurance claim stemming from
> vacating of a home in which the water supply was contaminated with E.
> coli bacteria, see *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823,
> 826 (3d Cir. 2005). While *Port Authority* and *Hardinger* examined the
> meaning of "direct physical loss of or damage to" property outside of the
> COVID-19 context, their analysis is helpful for predicting how
> Pennsylvania courts would decide like cases . . . .  In *Port
> Authority* . . . the court concluded that "direct physical loss of or damage
> to" property usually requires "a distinct, demonstrable, and physical
> alteration" of the property, and when the cause of the asserted loss or
> damage is "unnoticeable to the naked eye," it only constitutes direct
> physical loss or damage if the "function [of the property] is nearly
> eliminated or destroyed, or the structure is made useless or uninhabitable."
> 311 F.3d at 235–36. Based on that principle, the Third Circuit agreed with
> the district court that for "physical loss or damage" to occur from asbestos
> fibers, there must be "contamination of the property such that its function
> is nearly eliminated or destroyed, or the structure is made useless or
> uninhabitable, or if there exists an imminent threat of the release of a
> quantity of asbestos fibers that would cause such loss of utility," and that
> "[t]he mere presence of asbestos, or the general threat of future damage
> from that presence, lacks the distinct and demonstrable character
> necessary for first-party insurance coverage." *Id.* at 236.

*In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. 1:21-MC-1, 2022 WL 7933018, at

*21 (W.D. Pa. Oct. 14, 2022).  Based on this analysis, the District Court concluded that Plaintiffs

did not plausibly plead "coverage under their Policies."

Further, this Court notes that in *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc*., 513 F. Supp.

3d 623, 628 (W.D. Pa. 2021) (Stickman, J.), the plaintiff (like Plaintiff in this case) contended

that its insurance policy did not define "direct physical loss of or damage to" property. The

District Court in *1 S.A.N.T.* noted that "failing to define a coverage term does not mean that [the

term] is ambiguous." *Id.*, at 629, citing *Capital Flip, LLC v. Am. Modern Select Ins. Co.*, 416 F.

Supp. 3d 435, 439 (W.D. Pa. 2019) (citing *Heebner v. Nationwide Ins. Enterprise*, 818 F. Supp.

2d 853, 857 (E.D. Pa. 2011)).  When a policy, or any document, neglects to define a term, the

Court will read it in the plain and generally accepted meaning of the term.  *Id.* The District Court

in *1 S.A.N.T.* considered the plain language of the four key terms: "direct," "physical," "loss,"

and "damage," and then held in relevant part:

> The Court examined these ordinary, dictionary definitions of the relevant
> terms in the context of their usage in the Policy language. For example,
> "loss" and "damage" do not stand alone but are modified by the terms
> "direct physical." The Court must give effect to all the terms in the context
> of the Policy language. The starting point of the analysis is "direct." The
> ordinary usage recounted presupposes a level of immediacy that is simply
> not present in 1 S.A.N.T.'s theory of coverage. Moreover, when combined
> with "physical", there is no reasonable question that the Policy language
> presupposes that the request for coverage stems from an actual impact to
> the property's structure, rather than the diminution of its economic value
> because of governmental actions that do not affect the structure. This
> understanding is highlighted, confirmed and consummated by the terms
> "loss of" or "damage to." The ordinary usage of these terms, individually
> and in the context of the other terms in the sentence, can only be
> reasonably construed as extending to events that impact the physical
> premises completely (loss) or partially (damage). On the other hand, a
> determination that "direct physical loss of or damage to" the property can
> refer to mere economic losses caused by governmental orders limiting the
> use of property (while not impacting the physical structure itself) would
> stretch the language beyond the plain meaning of its terms and beyond the
> interpretive authority of the Court.

513 F. Supp. 3d at 630.

Based on the foregoing law and authority this Court concurs with the rationale used in *In*

*re Erie* to arrive at the conclusion that the policy is not ambiguous with respect to the phrase

"direct physical loss of or damage to" Plaintiffs' property.  In addition, the plain meaning of the

phrase "direct physical loss of or damage to," as explained in *1 S.A.N.T.,* can be construed only to extend coverage to incidents which impact the physical structure, *i.e.* the covered property, and not to fact patterns like those presented here, where the physical structure remained intact and completely undamaged. The temporary loss of use of the four dormitories caused Plaintiffs to sustain an economic loss, but this Court finds that Plaintiffs did not sustain a direct physical loss of their dormitories, nor direct physical damage to their dormitories, given the plain of the phrase direct physical loss of or damage to."  Thus, because there was no physical impact to the structures (the dormitories) at issue in this case, the Court finds that there is no coverage under Defendant's policy for Plaintiffs' alleged economic losses.

## IV. CONCLUSION

Given the insurance policy's virus exclusion, and the facts as pled by Plaintiffs, coverage would be excluded for any of Plaintiffs' alleged economic losses encountered when the four dormitories were ordered to be vacated during the COVID-19 pandemic.  Moreover, in order to trigger coverage under the insurance policy, Plaintiffs' dormitories had to have sustained a direct physical loss of or damage to their actual structure.  The facts in Plaintiffs' Complaint fail to allege a direct physical loss of their dormitories, nor direct physical damage to their dormitories. As a result, Plaintiffs' claim for a declaration of coverage (count one) and the subsequent claims for breach of contract and bad faith (counts two and three) fail as a matter of law.  Accordingly, Defendant's Motion to Dismiss will be granted.  An appropriate Order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc:  All ECF Counsel of Record